UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES PASTOVIC, JR.,

        Plaintiff,

v.                                                                                         Case No. 14-C-653

CAROLYN COLVIN,

        Defendant.

**DECISION AND ORDER**

      Charles Pastovic, now in his late fifties, filed an application for Social Security Disability benefits. Following a hearing, an administrative law judge (ALJ) denied benefits, finding the Plaintiff capable of medium work. Following administrative appeals, the Plaintiff filed this action seeking review of the Commissioner's decision. For the reasons given below, the decision of the Commissioner will be affirmed.

**I. Background**

      By 2008 the Plaintiff had a history of coronary artery disease and received stents that year, which appeared to alleviate many or all of his symptoms. In addition, he had degenerative changes in his spine, which caused pain (particularly when riding his motorcycle) and was treated with physical therapy. He also experienced polyneuropathy in his limbs, either as a result of diabetes, vitamin deficiency, or even wearing shoes that were too small; the records are unclear, and Plaintiff did not undergo further testing. Plaintiff further experienced knee pain due to osteoarthritis and tenderness around his spine and aching in other areas, which Dr. Partain, a rheumatologist,

attributed to the Lipitor Plaintiff was taking, as well as possibly fibromyalgia. At the time of the hearing, he was two hundred and sixty pounds.

Plaintiff testified that his last job involved painting military vehicles, in 2009, but he was fired after a heart attack left him unable to keep up with the job's demands. (R. 54.) He testified that he was on a number of medications for his heart, as well as for pain and anxiety, although he had not been treated by any mental health professionals. He stated that the anxiety was a recent development due to his wife's ovarian cancer and the increased stress and other demands. He also testified that he could stand a few hours in a day and had lost some sensation in his legs, from his knees down to his feet.

The ALJ asked the vocational expert (VE) to assume a claimant who could perform medium work but with moderate limitations in things like climbing, balancing and stooping, kneeling, crawling, and limited exposure to unprotected heights, hazards, and moving machinery. (R. 71-72.) The VE said that such a claimant would be able to perform the claimant's past work as a spray painter and cleaner/janitorial supervisor. In addition, there were thousands of other jobs in the regional economy. The ALJ then asked the VE to assume additional limitations of no more than frequent overhead reaching with the right hand, as well as frequent handling and fingering bilaterally. The VE said that the cleaner and janitorial supervisor positions would still be available, as well as other jobs like floor attendant or laborer. (R. 73.) The ALJ ultimately found that the Plaintiff maintained the ability to do medium work, with several restrictions, and thus denied the claim for disability benefits.

**II. Analysis**

In reviewing an ALJ's decision, a court does not try the case *de novo* or replace the ALJ's

finding with the Court's own assessment of the evidence. *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989). The findings of the Commissioner as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir.2000). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings and is otherwise free from error. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir.1996). Finally, the Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless "the record 'compels' a contrary result ." *Borovsky v. Holder,* 612 F.3d 917, 921 (7th Cir. 2010).

**A. RFC Determination**

Plaintiff argues that the ALJ's RFC (residual functional capacity) determination was flawed. First, he argues that the ALJ erred in finding Plaintiff's mental health impairments to be non-severe. The ALJ concluded that "although the claimant complained of depression with anxiety, the exhibits of record fail to demonstrate much in the way of a longitudinal treatment history for mental health impairment between July 15, 2009 and December 2010." (R. 24.) The Plaintiff believes this is incorrect. Dr. Partain, the rheumatologist, stated Plaintiff was suffering from depression and anxiety due to his wife's deteriorating health. (R. 548.)

Dr. Partain's letter is undeniable, but the letter was written to Plaintiff's counsel as a kind

3

of summary of Plaintiff's health conditions. Dr. Partain, a rheumatologist, did not conduct an extensive mental health examination of the Plaintiff, and in fact he noted that many of the symptoms were a more recent development due to Plaintiff's wife's disease. Importantly, the two state agency reviewers concluded Plaintiff's mental health was not an impairment at all. It is true that their review predated Plaintiff's more recent uptick in depression and anxiety, but the point the ALJ made was that there was no "longitudinal" history of mental illness. Clearly Plaintiff's condition changed based on more recent events—as it would for almost anyone in similar circumstances— but that was not evidence of a condition that would preclude Plaintiff from working over the long term.

Plaintiff also argues the ALJ erred in assigning a medium-work RFC, which requires lifting 50 pounds and standing or walking six hours in a day. For support, he cites various records and conditions, including his polyneuropathy (tingling in feet) (R. 495), osteoarthritis in his knees (R. 501); degenerative disk disease and disk space narrowing, and significant osteoarthritis of the lower back. (R. 529.) Although it is true that the records show the claimant had these conditions, almost *every* claimant will be able to point to medical records substantiating the existence of their conditions. But the question is usually not the *existence* of a given condition, it is severity of that condition and the limitations it imposes. For example, the question is not whether Plaintiff *had* polyneuropathy or osteoarthritis—conditions suffered by millions of people, relatively few of whom would be considered disabled— the question is whether these conditions were sufficiently disabling that he could not work. Here, none of the records suggest that the Plaintiff would be unable to stand or perform medium work due to any of the conditions described. Simply citing medical records evidencing the mere existence of a claimant's various medical conditions does not show that the ALJ erred.

4

Plaintiff also argues the ALJ erred by failing to provide a function-by-function analysis. Under the regulations, the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p. It is true that the regulation requires a functional analysis, but that does not mean the ALJ must *articulate* his decision in a function-by-function method, or any particular method at all. "Although the 'RFC assessment is a function-by-function assessment,' SSR 96–8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue,* 327 Fed.Appx. 652, 657, 2009 WL 1747901, *5 (7th Cir. 2009). Plaintiff's particular argument is that the ALJ did not articulate why Plaintiff could stand and walk, or lift 50 pounds, given his cervical, back, shoulder and knee pain. But that conclusion was implicit in the ALJ's rejection of the opinion of Dr. Partain, discussed below.

**B. Treating Source Opinion**

The ALJ considered the treating source, Dr. Partain, at some length. First, he noted that "Dr. Partain believed the claimant's chronic widespread pain condition is related to fibromyalgia syndrome and recommended treatment with the three FDA-approved medications . . . .However, claimant was not interested in medication intervention." (R. 25.) The ALJ noted that Dr. Partain had reviewed the neurological record and found "essentially negative neurological examination except for reduced sensation to light touch and palpation" in the legs and fingers. (R. 26.) Dr. Partain "believed the claimant's symptoms were related to osteoarthritis and degenerative disc disease with his muscle aching quite possibly related to his cholesterol medications as well as

5

probably from fibromyalgia syndrome." (R. 27.)

In discounting Dr. Partain's opinion that Plaintiff could not perform any work, the ALJ noted that the opinion "stood in contrast to the objective medical evidence, which apart from some tenderness and mild abnormal imaging scans, showed that claimant has normal strength, reflexes and strength." (R. 32.) Much of the evidence was from Dr. Partain himself, whose review of Plaintiff's symptoms included some tender points and "mild abnormal imaging scans," with the bulk of the findings being perfectly normal—reflexes, strength, motion, walking, standing, etc. The ALJ noted that neither Dr. Partain's own notes nor anything else in the medical record would support the "highly limiting restrictions" imposed by Dr. Partain, including standing less than two hours and two to four hours of sitting. Dr. Partain also believed Plaintiff would be off-task 25 percent of the time and would miss four or more days per month, both of which would preclude employment, but there was no support for those substantial limitations in the record.

Again, Plaintiff points to medical records that show he likely has various conditions, including osteoarthritis and degenerative disc disease. The question, however, is not *whether* a claimant has a given condition, it is how extensive that condition is and whether it is serious enough to preclude gainful employment. After all, the ALJ himself found that these conditions constituted severe impairments (R. 24), and so even the ALJ agreed that the conditions existed. Simply citing records showing that the conditions existed does not speak to the relevant question. Plaintiff also had peripheral neuropathy symptoms, whether due to diabetes or vitamin deficiency or otherwise, but again there is no indication in the record that this would have caused any meaningful reduction in his ability to stand or walk. The ALJ's point was not that he disagreed with the diagnoses of any of these conditions, but that there was little evidence in the record supporting the conclusion that

6

the conditions caused the kind of severe limitations Dr. Partain imposed. The ALJ noted that treatment was infrequent and conservative, and Plaintiff's daily activities suggested a reasonably normal life. Dr. Partain's own notes demonstrate that the Plaintiff deferred taking the suggested medication, was "not interested in additional intervention" to help his shoulder pain (R. 527), and "does not feel the need to undergo treatment" (R. 523). Nothing in the notes is suggestive of severely crippling symptoms. Instead, they merely reflect the Plaintiff's various conditions, including peripheral neuropathy and osteoarthritis (R. 526), which are not in dispute.

Moreover, the two state agency reviewers reviewed the record and concluded that the Plaintiff was capable of medium work. Dr. Chan concluded that "claimant only has mild degenerative changes; his complaints of pain and weakness are not fully substantiated by objective medical evidence." (R. 475.) "He has consistently been shown to have normal gait and full ROM [range of motion] and full strength in his extremities. . . . He also consistently tells his MD that his usual activities are not affected by his condition." (*Id.*)[1]

Finally, it is notable that Dr. Partain's opinion was itself couched in cautionary terms, evidencing the doctor's evident surprise that his patient was applying for disability. "Mr. Pastovic has not sought help in finding jobs that are less physically demanding than his previous job in construction. He has also been disinterested in utilizing medications that we typically give for treatment of fibromyalgia for reasons not fully clear to me." (R. 549.) This echoed the treatment

---

[1] Plaintiff also argues that the treating source opinion must be accepted if it is "not inconsistent" with the other medical evidence, and here the ALJ merely found that the other evidence did not support the opinion, which is somewhat different. In other words, if the objection is that the other medical evidence simply does not support a treating source opinion, that does not mean such evidence is "inconsistent" or contradictory, but only different. But, in some cases, an absence of support equates to an inconsistency.

7

notes, which noted the Plaintiff's lack of interest in medication. Dr. Partain further indicated that, while he believed the Plaintiff was incapable of competitive work at that moment (December 2012), it was possible that he would be able to work in a more sedentary capacity. (R. 549.) In discussing Dr. Partain's opinion, the ALJ was entitled to note that "claimant was not interested in medication intervention" as a reason for discounting Dr. Partain's opinion, which was based in large part on Plaintiff's subjective reports of pain. The ALJ also rightly observed that Dr. Partain's belief that Plaintiff would be off-task 25 percent of the time and would miss four or more days per month were unsupported by the record. There was no indication that the Plaintiff's pain was of such a disabling character that it would force him to miss work or cause him to be distracted as much as one-quarter of the time.

**C. Credibility**

Finally, the Plaintiff argues that the ALJ failed to adequately explain why he found his claims and testimony not entirely credible. An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). However, an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record. *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009). A failure to do so could also be grounds for reversal. *See Bjornson v. Astrue,* 671 F.3d 640, 649 (7th Cir. 2012).

The ALJ's credibility discussion is largely a recitation of the medical evidence he found supportive of his "no disability" conclusion. He noted the lack of special treatment for joint or back pain, lack of pain relief medication taken, the lack of objective findings of abnormality, apart from the disk disease and other issues noted above, and the problems with Dr. Partain's opinion. In addition, the ALJ noted that the claimant had applied for, and received, unemployment

8

compensation in 2010 and 2011, indicating that he represented to the state that he was able to work and actively seeking employment. (R. 31.) These are all adequate reasons to discount a claimant's credibility, and they cannot be said to be patently wrong.

It is true that the ALJ's credibility determination is not completely bullet-proof. Plaintiff is correct, for example, that the claimant's daily activities (caring for his wife, grocery shopping, etc.) do not demonstrate an ability to do medium work, which involves standing for six hours and lifting 50 pounds. Plaintiff is also correct that applying for unemployment is not necessarily inconsistent with disability, because Plaintiff (at age 54) would be deemed disabled even if he could perform sedentary work. Even so, the ALJ was entitled to make note of the fact (it certainly was not dispositive) of the unemployment application, considering it as one factor among many that impacted the claimant's credibility. The possible, theoretical, consistency between an unemployment application and a disability claim "is something that lawyers can understand, [but] what's at issue is the credibility of the claimant, and thus the issue is what the claimant meant, at the time he filed for unemployment, when he told the unemployment agency, 'I am able to work.'" *Roovers v. Colvin,* No. 14-C-370, 2015 WL 347749, at *5 (E.D. Wis. Jan. 26, 2015).

Plaintiff also cites the medical records showing degeneration in the disks and joints, but once again the *fact* of a condition is not proof that the condition is disabling. The ALJ found several conditions to be severe, so it is not as though the ALJ ignored, or even disputed, their existence. The question is whether the conditions are disabling, and the ALJ noted that very little treatment or medication had been received, and the claimant often turned down the suggested course proposed by his physicians.

In sum, although not every ground cited by the ALJ would pass muster if viewed under a

9

microscope, review of credibility determinations is not so narrow. The ALJ cited several reasons that reasonably undermine the notion that the Plaintiff's conditions would have precluded him from working in a competitive environment.

**III. Conclusion**

For the reasons given above, the decision of the Commissioner is affirmed.

Dated this 11th day of August, 2015.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court